## Malcom & Gaul *vs.* Loveridge and others.

A bona fide purchaser or mortgagee of goods, for a valuable consideration, from a person in possession, who obtained them from the owner by false pretenses, amounting, under our statute, to a felony, will hold them against the first vendor; provided such vendor voluntarily parted with the possession, and intended to part with the title.

Appeal by the defendants from a judgment entered at a special term of the court. The complaint was served November 20th, 1848. It alledged that on the 17th day of November, 1848, at Waterloo, in the county of Seneca, the plaintiffs were the owners, and were entitled to the possession, of divers goods and chattels, enumerating them, which, on the same day, came into the possession of the defendants, who refused to deliver them to the plaintiffs, on request; by which they had sustained damages to $1297,32, and the plaintiffs demanded judgment for that sum. The answer denied the complaint, and alledged that the defendant McCarty bought the goods, &c. of the plaintiffs, and paid for them by his notes, and that the defendants Lines Loveridge and Garry Loveridge took the goods of McCarty by virtue of chattel mortgages executed to them on the goods, for money advanced, and responsibilities incurred on the credit of them. The reply admitted the purchase of the goods and the giving of the notes therefor by McCarty, but alledged, in general terms, that McCarty obtained them by false pretenses. It admitted that McCarty executed the chattel mortgages; but whether the defendants, the Loveridges, came into the possession of the goods by virtue of such mortgages, and whether said McCarty was actually indebted to the Loveridges in the sums stated in the mortgages, and if so indebted, whether the debt was contracted before the execution of the mortgages, or upon the credit of the goods, &c. the plaintiffs alledged they had not sufficient knowledge upon which to form a belief, &c. The pleadings contained other allegations which are sufficiently adverted to in the opinion of the court. The action was tried at the Seneca circuit in March, 1849, held by Mullett, justice, and a verdict rendered for the plaintiffs for $1200; upon which judgment was entered at a special term.

At the trial a witness testified to the purchase of the goods in question by McCarty, of the plaintiffs, in the city of New-York. The plaintiffs' counsel then inquired of the witness what conversation took place between McCarty and the plaintiffs at the time the goods were obtained. Whereupon the counsel for the defendants objected, and insisted that upon the pleadings the testimony proposed by the question was improper; and that no questions in regard to representations, made by McCarty in the purchase of the goods, for the purpose of proving a fraudulent purchase, or false pretenses, were admissible under the pleadings. The court overruled the objection and the defendants' counsel excepted. The plaintiffs then gave evidence tending to show that the goods in question were obtained by McCarty from the plaintiffs by false and fraudulent representations. The defendants gave evidence with a view to establish the validity of the chattel mortgages, which it is unnecessary to detail.

The charge of the justice, on submitting the case to the jury, is sufficiently stated in the opinion which follows.

*A. T. Knox,* for the appellants.

*C. Tucker,* for the respondents.

*By the Court,* WELLES, J. The first question is upon the objection at the trial, by the defendants' counsel, to the admission of the evidence of conversation between McCarty and the plaintiffs, at the time the goods were purchased by the former, in New-York. The objection was put upon the ground generally that the evidence was not admissible under the pleadings. The defendants, Lines and Garry Loveridge, make title to the goods in question through chattel mortgages executed to them by the defendant McCarty, who purchased the goods of the plaintiffs. This is set up in the answer. The reply states "that previous to and at the time of such purchase and delivery," &c. "he, the said McCarty, to induce the said plaintiffs to consent to such purchase and delivery, and to defraud the said plaintiffs, made use of certain false and fraudulent representations

and pretenses, with regard to his pecuniary circumstances, which said representations and pretenses were calculated and intended by him to deceive, mislead and defraud the said plaintiffs, and by which the said plaintiffs were deceived, misled and defrauded, and by which the said plaintiffs were induced to consent to the purchase of the said goods and chattels by the said McCarty, to deliver the same to him, and to give to the said McCarty a credit by taking his notes therefor," &c. The pleadings were all under the code of 1848, which did not allow a demurrer to the reply. The defendant was at liberty to avail himself, on the trial, of any valid objection to its sufficiency. (*Code of 1848, § 144.*)

The sale and delivery of the goods by the plaintiffs to Mc-Carty, upon credit, and the chattel mortgages, from the latter to the Loveridges, are facts admitted by the pleadings. If they were *bona fide* mortgagees they would confessedly hold the goods, provided the title passed, upon the sale by the plaintiffs to Mc-Carty. One of the ways in which the plaintiffs, by their reply, avoid the mortgages, is by alledging that the goods were obtained from them by McCarty by fraud and false representations and pretenses with regard to his pecuniary circumstances, without stating what the representations or pretenses were. The first opportunity the defendants have had of presenting the question of the sufficiency of the reply was when the evidence was offered under it at the trial. If the admissibility of the evidence objected to depended upon that part of the reply before mentioned and recited, I should think the question a clear one. The reply is entirely too general and wholesale to stand the test of a general demurrer, under the former law and practice, which I think is still a good criterion of the sufficiency of pleadings under either of the codes.

But there is an independent issue in the pleadings, upon the title of McCarty to the goods in question on the 30th October, 1848. The defendants assert such title in their answer, and the plaintiffs in their reply deny it. The issue was material, and might be controlling of the whole controversy. If McCarty had no title on the day mentioned, the defendants, (the Loveridges,)

acquired no interest through their mortgages, unless they were bona fide purchasers or mortgagees. And if the goods were obtained from the plaintiffs by material false and fraudulent representations and pretenses, as between the plaintiffs and McCarty, no title passed, and the plaintiffs had the right to reclaim them from McCarty, or any other person except bona fide purchasers of McCarty.

The complaint alledges title in the plaintiffs on the 17th November, 1848. The answer sets up title in McCarty on the 30th October previous, and the Loveridges derive title through mortgages executed by him on that day. An independent part of the reply is that McCarty had not title on the 30th October, 1848, or at any other time. This I think was a good issue, and under it the evidence objected to was admissible.

The most material question, however, arises upon the charge to the jury. His honor instructed them "that a fraudulent purchaser of goods acquires no rights whatever against the vendor; and that if in this case, they should find that McCarty obtained the goods by false pretenses, he acquired no title, and would confer no more than if he had acquired them feloniously, indeed that the obtaining them by false pretenses was a felony. That, if so, all the pretense of selling or transferring the goods by the chattel mortgage was useless, inasmuch as the Loveridges would acquire no title to them, better than that of McCarty; that the main thing to inquire was, were the goods obtained by false pretenses, as the plaintiffs alledge? If they were, a verdict should be rendered for the plaintiffs." In another part of the charge his honor uses the following language: "That the obtaining of goods under false pretenses was a felony; and that when goods were so obtained, the vendors could follow them into the hands even of a *bona fide* purchaser, as a felonious taking passed no title whatever. The jury were then to determine whether McCarty obtained these goods by false pretenses, such as could convict him of felony. If they should so determine, the plaintiffs were entitled to a verdict."

This doctrine of the learned justice as applied to this case must be sustained, or a new trial should be granted; because the

effect of it was entirely to exclude from the consideration of the jury the question whether the mortgages or either of them were boda fide and for valuable considerations in whole or in part.

The position assumed is certainly not without highly respectable authority to support it. The doctrine was distinctly asserted by Chief Justice Savage in *Andrew* v. *Dieterich*, (14 *Wend.* 31,) and by Justice Willard in *Robinson & Wilder.* v. *Dauchy & Flood*, (3 *Barb. S. C. Rep.* 20.) In those cases however, the same decisions must have been made, without reference to the doctrine in question. In the first, the property was to be paid for in cash. It consisted of rolls of carpeting which were sent by the plaintiff to the house of one Simmons the vendee, (both of whom resided in the city of New-York,) from which rolls Simmons was to measure and cut off at his house what he needed and return the balance to the plaintiff and pay for what he used. Simmons measured and cut off what he needed, and put it down in his rooms. Several days afterwards, the remnants having been returned, and the quantity cut off having been ascertained, a bill of the carpeting was made out and presented for payment, and an answer returned by Simmons that as soon as he could measure the carpet and see that all was right, the bill would be paid. Instead of which Simmons absconded, having previously pledged the carpeting to the defendant to secure an advance of money made at the time, and without any knowledge of the relations between the plaintiff and Simmons ; the defendant taking the property pledged, home to his own house. The plaintiff demanded the carpeting of the defendant, who refused to deliver it until his lien was discharged. The plaintiff brought replevin against him, and was allowed to recover. There it will be seen was an agreement to sell for cash ; the sale was not even formally completed until the quantity of the carpeting was ascertained, and it is most obvious, the vendor never intended to part with the title until he received payment. According to all the cases, ancient and modern, he had a right to reclaim the property against all the world, and that even a *bona fide* purchaser for a valuable consideration would not in such a case be protected.

Malcom *v.* Loveridge.

In the other case, of *Robinson & Wilder* v. *Dauchy & Flood,* the plaintiffs were grocers residing in Boston, and sold and delivered the goods in question on credit to one Kline, who obtained the credit by means of false and fraudulent representations respecting his pecuniary circumstances. The goods were afterwards sold by an agent of Kline to the defendants. There was evidence tending to show that the defendants were not bona fide purchasers, and Parker, justice, before whom the action was tried, charged the jury, that if the goods were obtained by Kline by false pretenses, the sale as to him was void, and as to all others obtaining title from him, except purchasers in good faith. That if the defendants were purchasers in good faith, they could hold them, but if not, the plaintiffs were entitled to recover. The jury found a verdict for the plaintiffs, and on a case made the defendants moved for a new trial at the general term, which the court denied. Justice Willard, in delivering the opinion of the court, says the charge of the circuit judge was more favorable to the defendants than was warranted by the law and the facts. He regards it an error in the circuit judge in instructing the jury that a bona fide purchaser in such a case was protected. Of course a new trial could not be granted on that ground. The error, if it was one, was in favor of the defendants. The case, therefore, proves nothing as an authority, on the point in question. It will readily be seen that both cases could be properly decided in the way they were without reference to the doctrine under consideration. They are the only cases I have met with, on the examination of this case, containing judicial opinions conflicting with the views I am about to present.

It is a fundamental rule of the law of personal property, that no one can transfer a better title than he has himself; and a sale, *ex vi termini,* imports nothing more than that the purchaser succeeds to the rights of the vendor. This is the general regulating principle, but is subject to many exceptions and qualifications. Under this rule it has repeatedly been held, and undoubtedly is the law, that the *bona fide* purchaser of stolen goods, cannot hold them, against the true owner.

It is also a well settled general principle, that fraud vitiates and renders void a contract. Hence a fraudulent purchase of goods is void as between the immediate parties, and no title passes to the vendee. These principles are too common to require the citation of authorities to prove them. One of the qualifications or exceptions to the first of these rules is that where a person enters into a contract of sale of goods to another, and gives the purchaser credit for the purchase money, and a delivery of the property takes place, a person buying in good faith, for a valuable consideration, of the first purchaser, will hold the property, notwithstanding the first purchase was fraudulent, and void as between the parties to it, and might have been avoided by the first vendor, as against his immediate vendee, and the property reclaimed while it remained in his hands. The reason of this rule, or rather exception to a general rule is ; that in such case the vendor has put it into the power of the vendee to treat the property as his own. It is a virtual authority to him to pass the title to others. He put the vendee in possession and intended to invest him with the title. It is a case where one of two innocent persons must suffer, and it is better that the loss should fall on him who has been instrumental, though innocently, of the wrong, than upon the other, who has had no power to guard against the fraud. So far, no lawyer will controvert the positions laid down ; except where the fraud in obtaining the goods was such as to amount to a felony. But it is necessary for me to go one step farther. I am prepared to hold that a *bona fide* purchaser or mortgagee of goods for a valuable consideration, from a person in possession who obtained them from the owner by false pretenses amounting, under our statute, to felony, will hold them against the first vendor, provided such vendor voluntarily parted with the possession, and intended to part with the title. (*See Mowry* v. *Walsh*, 8 *Cowen*, 238.)

To hold the party's right to reclaim the goods to depend upon the question whether they were feloniously obtained from him, would be unreasonable and inconsistent. And such I am persuaded is not the rule. Any taking without his consent,

Malcom *v.* Loveridge.

although it should not amount to a misdemeanor, I apprehend would be sufficient. And where the taking was with his consent, when he did not intend to part with the title as in case of most kinds of bailment, he would have the right of reclamation against all the world. It is urged on the part of the respondents that admitting the Loveridges might as *bona fide* mortgagees from a fraudulent vendee, hold the property, yet, as their title is derived through a felony, they must fail. The argument is this: the property was obtained by McCarty by false pretenses. That offense may be punished by imprisonment in the state prison. (2 *R. S.* 677, § 53.) Felony is defined to be an offense so punishable. (*Id.* 702, § 30.) Therefore McCarty obtained the goods feloniously, and therefore the common law rule applies that no title can be obtained through a felony. That was substantially the reasoning of Chief Justice Savage in *Andrews* v. *Dieterich*, but which I have attempted to show was unnecessary to the decision, and we are at liberty to treat it as *obiter*. It was for quite a long time after the revised statutes, a question of doubt whether obtaining goods, &c. by false pretenses amounted to a felony, and it has now come to be regarded so, only by the above circuitous process of reasoning. Admitting it to be so, I am satisfied the legislature never contemplated any such consequence as is claimed to result from it. It is worthy of remark, that most of the cases, especially the older ones, holding the right of reclamation in the owner of goods feloniously obtained, were cases of larceny. Indeed there were no cases at common law of which I am aware, of a felonious taking of goods which did not amount to larceny. The rule respecting the right to reclaim, was one of the common law, and had its origin when every felonious obtaining of goods was a larceny. One indispensable requisite or ingredient of that offense is, and always was, that the original taking be tortious. The rule in question, when applied to such cases, was supported by sound reason. A party losing his property without his consent should not be answerable for the fraud committed upon a *bona fide* purchaser. If he parts with his property voluntarily, although deceived, he has by his own want of proper

caution, it may be, put it in the power of his vendee to impose upon a subsequent purchaser, and should therefore sustain the loss.

Upon the whole I am satisfied the judge in the present case, although sustained by other eminent jurists, was mistaken in his view of the law on the question I have discussed so much at length, and for that reason a new trial should be granted.

Ordered accordingly.

[MONROE GENERAL TERM, June 3, 1851.    *Welles, Selden* and *Johnson*, Justices.]