SUPREME COURT.   Jefferson General Term, April, 1856.
*Pratt, Bacon* and *Allen,* Justices.

JOHN H. KLOCK pl'ff in error *vs.* THE PEOPLE def'ts in error

Where, on a trial for a felony, after the public prosecutor has entered upon his case and given evidence to the jury, he finds himself unprepared with the proper evidence to convict, and obtains leave of the court to withdraw a juror, and thus arrest the trial, such withdrawal not being the result of improper practice on the part of the defendant or any one acting with or for him, or of any overruling inevitable necessity, the defendant can not be again put on trial for the same offence.

The objection to a second trial in such a case, does not rest upon the constitutional provision that no person shall be subject to be twice put in jeopardy for the same offence; that provision is a protection only where there has been a conviction or acquittal by the verdict of a jury, and judgment has passed thereon and does not apply to a case where the jury have been discharged without giving any verdict or where judgment has been arrested.

But the objection lies back of the constitution and rests upon the principles of the common law, which are essential to the protection of the accused, by securing him a speedy and impartial trial and the best means of vindicating his innocence.

Whether the same rule applies to trials for mere misdemeanors, *quere?*

The decision in the case of the *People* v. *Ellis,* 15 *Wend. R.* 371, doubted.

The practice to be adopted in bringing up the question in such a case, discussed.

This was a writ of error to the Jefferson county Sessions. The plaintiff in error was indicted in the court of Sessions of Jefferson county, for the crime of arson in the third degree. At the February term of that court (1853,) a jury was impanneled for the trial of the indictment upon the plea of not guilty, and evidence given of the offence and of circumstances tending to establish the guilt of the accused. Towards the close of the evidence on the part of the prosecution, the court upon the objection of the counsel for the prisoner, ruled that a certain fact sought to be proved by the public prosecutor could only be proved by record evidence and excluded the evidence in that behalf offered, whereupon on motion of the district attorney without the consent and against the objection of the accused, a juror was withdrawn and the jury discharged.

At the ensuing June term, the district attorney again moved the trial of the indictment, and the defendant set up by way of plea the foregoing facts in bar of the further prosecution of the indictment upon demurrer; the plea was holden insufficient in law and the defendant brings error to this court.

*John Clarke,* for plaintiff in error.

*J. F. Starbuck,* (District Attorney) for the people.

I. The objection to the trial of a prisoner after one trial has been commenced, and a juror has been withdrawn, rests solely upon the provision in the constitution of this state in these words:

" No person shall be subject to be twice put in jeopardy for the same offence." (*Const. of N. Y. art.* 1, § 6.)

II. The true signification of the above constitutional prohibition is that *after verdict* no person shall be subjected to a second trial for the same offence.

" That no man is in *jeopardy* until verdict rendered, has been held by the Supreme Court of the United States, by Washington, J., Story, J. and McLean, J., sitting in their several circuits, and by the courts of Massachusetts, New York, Illinois, Kentucky and Mississippi." (*Whart. Amer. Cr. Law,* 209; *U. S.* v. *Perez, Wheaton,* 579.)

III. If the trial of a prisoner, after the withdrawal of a juror, is prohibited by the above constitutional provision, then the discharge of a jury on disagreement, or for any other cause, must be a bar to a future trial. That such discharge does not constitute a bar, has in repeated instances been expressly held by the highest judicial tribunals in the country. (*Whart. Amer. Cr. Law,* 209, 10, 212; *Com.* v. *Bowden,* 9 *Mass.* 494; *Com.* v. *Purchase,* 2 *Pick.* 521; *People* v. *Goodwin,* 18 *J. R.* 187; *People* v. *Olcutt,* 2 *John. Cases,* 301.)

IV. The constitutional prohibition against putting a person twice " in jeopardy," has no application except to cases where the facts are such as to sustain the technical plea of *autrefois*

*acquit* or *autrefois convict.* This plea is applicable only in cases of *verdict* or *judgment*, and must be supported by the *record.* In this case there is no verdict, no judgment, no record, and none is alleged in the plea. The plea is therefore bad, and the demurrer was properly sustained.

If we ascertain what is necessary to constitute at common law, a good plea of *autrefois acquit* or *autrefois convict*, we shall have what constitutes a complete defense under this clause of the constitution. It is not, therefore, possible to support the defence of a former acquittal, by anything short of a final judgment or verdict. The accused can not with any propriety rely on the discharge of the former jury, without any verdict either for or against him. (*Whart. Amer. Cr. Law*, 213, *and cases there cited.*)

" The *record* of the former indictment and acquittal must be set out in the plea, otherwise it will be bad on demurrer." (*Archbold's Crim. Pleadings*, 90; *Gould & Banks ed. of* 1846, 109; *R.* v. *Wildley*, 1 *M. & Selw.* 148.)

V. The right to withdraw a juror and hold the accused for trial at a future term, is a matter, *in all cases*, resting in the discretion of the court to which the application is originally addressed, and this discretion will not be interfered with unless the appellate tribunal can see that it has been abused. This demurrer would, therefore, be upheld even were the indictment for a capital felony.

In all cases of *misdemeanor*, as distinguished from *felony*, the right is absolute, and exists as fully as it does in civil actions. (*W. Crim. Law*, 209, 10, 12, 13; *People* v. *Goodwin*, 18 *J. R.* 187; *People* v. *Olcutt*, 2 *John. cases* 301; *People* v. *Ellis & al.* 15 *Wend.* 371; *People* v. *Barret & Ward*, ₍ *Caines*, *R.* 100, 304.)

VI. The indictment in this case is for a misdemeanor, and not a felony, and hence the right to withdraw a juror and hold the accused is absolute, as in a civil action.

Every person who shall willfully burn any building insured against fire, with intent to prejudice the insurer, shall be guilty of *arson in the third degree.* (2 *R. S.* 667, § 5.)

The *attempt* is punishable by imprisonment for half the length of time. (2 *R. S.* 698, § 3.)

There is no *statute* in which arson is spoken of as a felony, but it is left to be classed according to the common law classification of crimes.

This crime has been supposed to be ranked amongst felonies, simply because it is punished by imprisonment in the state prison, and this impression has grown out of the careless reading of the following section:

" The term " felony," when used *in this act,* or in any other *statute,* shall be construed to mean an offence for which the offender, on conviction, shall be liable to be punished by death, or by imprisonment in a state prison." (2 *R. S.* 702, § 30.)

This is a mere *statutory definition of a word,* and by no means enacts that all offences, punishable by imprisonment in the state prison, are to be deemed felonies.

That the setting fire to one's own house is a *misdemeanor,* and not a *felony,* is abundantly established by reference to 4 *Black. Com.* 95, 96, 98, 221, 4; *see also Tomlin's Law Dictionary, titles " Felony," and " Misdemeanor."*

VII. The degree of punishment is no test of felony. Many *felonies* are punishable by imprisonment in the county jail only, while many *misdemeanors* are punishable by imprisonment in the state prison, and many offences are punishable in the one place or the other, in the discretion of the court.

" It seems that the Revised Statutes have not made the offence of petit larceny a *misdemeanor;* but that it still remains a *felony,* as at common law." (*Ward* v. *The People,* 3 *Hill,* 396.)

Breaking jail is classed in R. S. under the head of *misdemeanors.* (2 *R. S.* 686, § 24.)

Selling another as a slave is declared by statute to be a *misdemeanor,* and yet it is punished by 14 years in state prison. (1 *R. S.* 658, § 8.)

Seduction is also made a *misdemeanor* by statute, and yet it is punished by five years in state prison. (*Sess. Laws,* 1848, *ch.* 111, § 1.)

So in the " anti-rent " act, a riot by persons armed and disguised is called a misdemeanor, and is punished by two years in state prison. (*Sess. Laws of* 1845, *ch*. 3, § 7.)

The following are some of the offences punishable by fine, or imprisonment in the county jail, or state prison, in the discretion of the court, viz:

Aiding felons to escape, (2 *R. S.* 699, § 7.) Offences against the anti-rent act, (*Sess. Laws of* 1845, *ch*. 3, § 7.) Opening graves, &c., (2 *R. S.* 689, § 15.) Poisoning cattle, &c., (2 *R. S.* 689, § 16.) Obstructing railroad, &c., (*Sess. Laws* 1838, *ch*. 160, § 1. Compounding felony, &c., (2 *R. S.* 689, § 17.) Receiving stolen goods, &c., (2 *R. S.* 680, § 71.) Breaking jail, &c., (2 *R. S.* 686, § 24.) Seduction, (*Sess. Laws of* 1848, *ch*. 111, § 1.) Selling another as a slave, &c., (1 *R. S.* 658, § 8.)

VIII. If the prisoner is defeated on the issue tendered by his plea, he is not permitted to deny the truth of the bill, but must appear for sentence. This is the uniform rule in all cases of misdemeanor. In cases of felony, the practice, on this point, is in the discretion of the court in each particular case. (*Whart. Crim. Law*, 187, 204, 5; *People* v. *Thayer*, 3 *Den.* 9; *Arch. Crim. Pl.* 90, (110,) 84.)

*By the Court*, W. F. ALLEN, J.—The objection upon which the plaintiff in error relies to the further prosecution of the indictment was not necessarily taken by plea, but might have been taken by way of exception to a second trial or by a motion in arrest of judgment; and as there has been no technical trial resulting in a verdict and judgment, on which a plea of *autrefois acquit* or *convict* can be based, it may be doubtful whether the objection can be taken by plea. It might also have been objected that the record showing merely a decision of the demurrer by the court below without a judgment upon the whole record, there was nothing before us for review upon this writ of error. But no question of form was made in the court of Sessions, and none is made here, but both parties desire an adjudication upon the question intended to be made

without regard to the form in which it was presented below or is brought before us.

The real question is, whether it is allowable for a public prosecutor after having entered upon his case by the giving of evidence to a jury impanneled for the trial of an indictment, to withdraw a juror and thus arrest the trial so as to enable him to try the party at a subsequent time, solely because he finds himself unprepared with the proper evidence to convict where his condition is not the result of improper practice on the part of the defendant, or some one acting with and for him or some overruling inevitable necessity.

The counsel for the people appeared by the course of his very able argument, to suppose that the objections taken by the accused to a second trial rested entirely upon the constitutional provision, that " no person shall be subject to be twice put in jeopardy for the same offence." (*Art.* 1, § 6,) and if he is right in his premises, he is clearly right in his conclusion that there was no valid objection to proceeding with the trial of this indictment a second time. The judicial interpretation of a corresponding provision in the constitution of the United States is, that it prohibits a second trial of a party for the same offence, after he has been once convicted or acquitted by the verdict of a jury, and judgment has passed thereon for or against him, and it does not mean that he shall not be tried a second time if the jury have been discharged without giving any verdict, or judgment has been arrested. (*Story's Com. on Const.* § 1781, *U. S.* v. *Perez*, 9 *Wheat.* 579.) The state constitution of 1821, was in words a transcript of the provision of the constitution of the United States as follows: " No person shall be subject for the same offence to be twice put in jeopardy of life and limb," and was construed to include within its terms all felonies and capital offences. The only departure from this formula in the constitution of 1846 is in the omission of the limitation confining the prohibition to offences involving the life or limb of the accused. " Jeopardy of limb," in the former construction referred to offences denominated in the law felonies,

(*Per Spencer, Ch. J., People* v. *Goodwin,* 18 *J. R.* 201,) and whether the present constitution includes parties charged with misdemeanors within the protection of this provision need not be considered.

To the extent of the provision referred to, the constitution is but declaratory of the common law, which declared that no man should be twice convicted or twice put in peril of legal penalties for the same offence, and no man could be said to be within the protection of this rule unless he could sustain a plea of *autrefois acquit* or *convict.* (*Broome's Legal Maxims,* 137; *Bouvier's Law Dict., tit. " Jeopardy."*) The civil law contains the same prohibition in the maxim *" Non bis in idem,"* and a party once tried and either convicted or acquitted, can not be again tried. The plaintiff in error has not been once tried so as to bring himself within the constitutional protection, as no verdict or judgment has been given. The true ground of the objection lies back of the constitution, and is found in the principles which have been deemed essential to the full and fair protection of individuals accused of crime, and to secure to them a speedy and impartial trial, and the best means of indicating their innocence. The practice and the views of courts of criminal jurisdiction upon questions somewhat analogous to that presented in this case, have passed through some modifications. Kent, J., in *People* v. *Olcott,* (2 *J. C.* 301,) refers in detail to the earlier cases bearing upon the point, and while his review of the cases shows distinctly the modification and changes which have taken place in the practice of courts, it also shows the great tenderness and care manifested by the judges for the rights of the accused and to secure to them every right essential to their defence, and an anxiety to protect them against any act or omission of the government or the public prosecutor which could injuriously affect them. They have felt at liberty to interfere and arrest a trial and dispense with a verdict from a jury once empanneled only when compelled to do so by some necessity or by some improper and fraudulent act of the accused, which would or might interfere and prevent a full and fair trial or impartial ve lict. Lord Coke says: " A jury sworn

and charged in case of life or murder, can not be discharged by the court or any other, but they ought to give a verdict." (*Coke Lit.* 227, *b.;* 3 *Thomas Coke,* 495.) Blackstone modifies the proposition and says: " When any evidence hath been given the jury can not be discharged (unless in cases of evident necessity) till they have given in their verdict." (4 *Black. Com.* 360.)

One case of necessity now recognized and admitted for the discharge of a jury upon a criminal trial is their inability to agree upon a verdict, and therefore it is held that a discharge for that reason will not preclude a second trial, and the court will not, upon a second trial, review the decision of the first as to the existence of the cause in the particular case under the circumstances attending it. Doubts were at one time entertained whether this discretion existed in capital cases, but it is now conceded in all cases to the same extent as in civil actions. (*See People* v. *Denton,* 2 *J. R.* 275; *People* v *Olcott,* 2 *J. C.* 301; *People* v. *Goodwin,* 18 *J. R.* 187; *People* v. *Green,* 13 *W. R.* 55.) The *People* v. *Olcott* was a case of disagreement of the jury, and the decision of the court goes no farther than to hold that a discharge of the jury for that reason did not prevent another trial. In this case, Kent, J., approves the decision of Ch. J. Holt, in the case of the two *Kinlocks* (*Foster,* 27,) refusing to allow the prosecutor on finding his evidence defective to withdraw a juror and says this " was properly deemed an unreasonable and oppressive claim on the part of the prosecutor." In the *United States* v. *Perez,* (9 *Wheat.* 579,) it was held proper to discharge a jury because they were unable to agree in a capital case. Judge Story says the power may be exercised whenever in the opinion of the court, " taking all the circumstances into consideration, there is a manifest necessity for the act or the ends of public justice would otherwise be defeated." In the *People* v. *Goodwin,* Spencer, Ch. J., says: " Upon full consideration I am of opinion that although the power of discharging a jury is a delicate and highly important trust, yet that it does exist in cases of *extreme and absolute necessity,* and that it may be exercised without operating as an acquittal of the defendant;" and he applies the principle to a

case of a disagreement after a faithful and protracted effort to agree, but he also says: " I entirely concur in reprobating the proceeding of withdrawing a juror and subjecting a person to a second trial because the public prosecutor was not prepared for trial," and he approves the decision in *People* v. *Barrett,* (2 *Caines,* 304.) In the *People* v. *Green,* (13 *W. R.* 55,) Savage, Ch. J., refers to the case of Barrett, and does not dissent from the principle then decided, that the discharge of a jury, because the public prosecutor was not prepared with his testimony, was equivolent to an acquittal. In the *People* v. *Ellis,* (15 *W. R.* 371,) the rule appears to be somewhat relaxed in the case of a misdemeanor upon the reasoning of the court in Goodwin's case. Whether even this modification was well considered or whether it should be unhesitatingly adopted, may be questionable, but the learned justice pronouncing the opinion recognizes the rule in Barrett's case, as applicable to felonies. The case of the *United States* v. *Coolidge,* (2 *Gall.* 364,) decides that the court may discharge a jury when a witness present at the trial refuses to be sworn. Such proceeding is necessary to prevent a failure of justice, and the necessity has not been induced by any *laches* or want of vigilance or mistake on the part of the prosecutor. The *People* v. *Barrett* has never been questioned and is decisive of this case, expressly denying as it does, after a very full argument and careful consideration the right of the court to discharge a jury because the public prosecutor is unprepared with his evidence, and holding that such discharge is equivalent to an acquittal of the defendant. Livingston, J., says: " To discharge a juror under such circumstances would be liable to great abuse and oppression," and the reasons why the rule should be as declared in that case are very briefly and clearly stated by the learned judge. See also 2 *Russell on Crimes,* 970, in which it is said upon the authority of *Rex* v. *Wade,* (*R. & M. C. C.* 86,) that if a jury are sworn, and the prisoner is put upon his trial before the incompetency of a witness of tender years for want of proper instruction is discovered, although it would have been cause for putting off the trial to give an opportunity to instruct the witness, the judge

Klock v. The People.

can not discharge the jury, but should direct an acquittal. (*See* 2 *C. & H. Notes*, 1*st ed., p.* 953, *in note* 692.) I have met with no case in which it is intimated that a juror may be withdrawn and a criminal trial arrested, merely because the prosecutor is unprepared with his evidence or has mistaken his case or the character of the evidence required to support it, but judges have carefully excluded this from the list of cases in which a jury may be discharged. In the case before us, if the decision of the court upon the first trial was right in excluding the evidence offered by the district attorney, it was simply a misapprehension of the rules of evidence by the prosecutor, and the result was the want of the proper preparation for trial, and this without fault on the part of the accused; and if allowable in such a case to withdraw a juror, it is difficult to say in what case it may not be done if the prosecutor finds himself unable to convict, but can satisfy the court that there is further evidence within his reach and which may produce a conviction, and the trial of an indictment may come to be but little more than a series of experiments on the part of the prosecution at the expense of the accused. It is but proper to say that the ruling of the court upon the offered evidence was erroneous, but that does not alter the principle. The law does not give a right of review on criminal trials to the people, and the district attorney can not indirectly accomplish what is directly forbidden, and least of all can he be allowed, upon an adverse decision, to arrest the trial with a view to a more favorable decision at another term or before another tribunal. The counsel for the people in a very ingenious argument sought to bring this case within that of *People* v. *Ellis*, by making it a misdemeanor, and insisting that at common law it was a misdemeanor, and that, as it was not denominated a felony by the statute, it was not made such by any provision of law. Perhaps upon a very literal and technical construction of the statute defining a felony, (2 *R. S.* 702, § 30,) he may be right. But the intent was to do away with the common law definition of felony as entirely inapplicable, and to substitute one which should have significance and be readily understood. (*R. Notes*, 3 *R. S.* 836.) I think that

the clear intendment and proper meaning of the statute is to declare all crimes (not expressly denominated misdemeanors by statutes creating them) which are punishable by imprisonment in the state prison, to be felonies.  This has been the judicial interpretation of the provision and the decisions accord with the intent of the framers and the general understanding of the profession. (*Andrew* v. *Dutrick,* 14 *W. R.* 31; *Malcom* v. *Lorrendge,* 13 *Barb.* 372; *Robinson* v. *Dauchy,* 3 *id.* 20.) (*a.*) But be this as it may, and conceding that the learned counsel is right, the result is the same.  It matters but little by what name an offence is known in reference to the obsolete distinctions of the common law, so long as the punishment is the same, and the resulting disabilities the same, whether it be called a felony or a misdemeanor.  Call it by which name you please, and the result of a conviction for arson is the infliction of an infamous punishment, and the subjecting of the party to the loss of important civil rights and serious civil disabilities, and it is in view of consequences like this, that the rule for which I contend has been established, and it has been deemed better that many guilty should escape rather than one innocent man should suffer punishment wrongfully.  If in ordinary misdemeanors, the consequences of a conviction for which are not so serious, the rule of *The People* v. *Ellis* should apply, I should still be of the opinion that in cases of misdemeanor, punishable as felonies, a more stringent rule and one better calculated to protect a person charged with crime, from oppression and an unjust conviction, should be adhered to.  The case would be within the reason of the rule applicable to technical common law felonies and therefore within the rule itself.

The decision of the court below was erroneous and must be eversed and the defendant discharged.

(*a*) The People v. Van Steenbergh, 1 Park. Cr. R. 39.