The People of the State of New York ex rel. Victor Totalis, Relator, *v.* Philete F. Craver, Sheriff of the County of Rensselaer, Respondent.

Supreme Court, Rensselaer County, June 6, 1940.

*Leo F. Boland,* for the relator.

*Charles J. Ranney, District Attorney* [*Charles G. Maloy, Assistant District Attorney,* of counsel], for the People of the State of New York.

*Victor Totalis, in pro per.*

MURRAY, J.   The Constitution of the State of New York (Art. 1, § 6) declares that no person shall be subject to be twice put in jeopardy for the same offense.   The word jeopardy defined by Webster means, " exposure to death, loss or injury."   It is synonymous with peril, hazard or risk.   In law, jeopardy is that status which attaches to a person, when he is put on trial before a court of competent jurisdiction on an indictment, presentment or information which is sufficient in form and substance to sustain a conviction and a jury has been charged with his deliverance.

It is the peril in which a prisoner is put when he is regularly charged with a crime before a tribunal, properly organized and competent to try him.

Victor Totalis, the relator in this proceeding, was indicted by a grand jury of Rensselaer county, charged with the crimes of burglary, third degree, and petit larceny.   He pleaded not guilty, and on May 22, 1940, the district attorney of Rensselaer county moved for trial the indictment found against him at a regular term of the Rensselaer County Court.   The defendant appeared in person and by his counsel.   A jury was duly selected, impaneled and sworn to try the issues.

The prosecution completed its case and rested.   The record shows that at ten o'clock A. M., May 23, 1940, the jury was excused from the courtroom.   The district attorney moved for a mistrial. He stated that an article appeared in a Troy newspaper the previous night, setting forth that if the relator, Victor Totalis, were convicted by the jury he would be sentenced to a mandatory term of imprisonment of from ten to twenty years, because of the fact that he had previously been convicted of a felony.   The district attorney stated that the article was, in his opinion, inimical to justice, and for that reason moved for a mistrial.

The defendant's counsel stated: " The defendant strenuously objects to a mistrial being declared at this time.   If anybody is prejudiced by anybody, it is my client, the defendant, and not the District Attorney.   The District Attorney finished his case last night, and said he rested.   Now, he comes in here and moves for a mistrial on the ground that the people are prejudiced.   The defendant is the one prejudiced, if any one, not the District Attorney."

The court granted the motion, because in his judgment the statement was prejudicial to the defendant.   The court further stated: " Even if he were convicted he could take advantage of that statement, because it is a prejudicial statement against his interest."

Defendant's counsel then replied to the court: " I think it is up to the defendant whether he is prejudiced."   The court: " It is my duty.   I am deciding.   Motion granted."

After this episode the jury was brought back to the courtroom, and the court told them about what had happened in their absence from the jury box, and spoke to them about the newspaper article, and stated that he had no right to assume that they had read the article, and asked, " Have several of you read it?" The record shows that several of the jurors said " Yes."

The court repeated that he granted the motion for a mistrial, and remarked he would hear an application for bail at once at a reduced amount. The defendant's counsel insisted that the defendant had no money and apparently no friends with money. The defendant was then remanded to jail where he now is.

Upon petition of defendant's counsel that the relator was illegally restrained of his liberty, this court granted him a writ of habeas corpus. It is alleged in the petition that the relator, Victor Totalis, is illegally imprisoned in that he has once been put in jeopardy of conviction of the crimes for which he has been indicted, and for which he was placed on trial as above stated. The relator contends that the discharge of the jury was without his consent, express or implied, and against his objections, and that the discharge of the jury under such circumstances operated as an acquittal, and, therefore, he, as a matter of law, is entitled to immediate discharge from custody.

There is no appeal allowed a defendant in a criminal case except from a judgment of conviction. (Code Crim. Proc. § 517.) There is no appeal from the order of the court made at the time relator was remanded. The defendant is in no position to move in arrest of judgment for there is no prospective judgment to arrest. Under the circumstances, the only available remedy for relator is habeas corpus. The relator's constitutional rights cannot be adequately preserved other than by a writ of habeas corpus. (*People ex rel. Stabile* v. *Warden*, 202 N. Y. 138, 153.)

The writ of habeas corpus is the correct remedy to test the question whether a defendant has once been placed in jeopardy by the improper discharge of the jury, either before or after the case has been submitted to it for decision. (*People ex rel. Brinkman* v. *Barr*, 248 N. Y. 126.)

It is settled law that when a jury is arbitrarily discharged in a criminal case without the consent of the defendant, and where no circumstances exist calling for or permitting the exercise of a discretion by the court, the defendant is, by reason of the trial that thus comes to a sudden end, placed in jeopardy within the constitutional provisions and such discharge is a reason why the defendant should not be again brought to trial upon the same indictment. (*People ex rel. Brinkman* v. *Barr, supra; People ex rel. Stabile* v.

*Warden, supra; Ex parte Ulrich,* 42 Fed. 587; *Commonwealth* v. *Hart,* 149 Mass. 7; 20 N. E. 310; *Commonwealth* v. *Fitzpatrick,* 121 Penn. St. 109; 15 A. 466; *People* v. *Curtis,* 76 Cal. 57; 17 P. 941; *Jones* v. *State,* 97 Ala. 77; 12 So. 274.)

That the trial court possesses the discretion to discharge a jury during the course of a trial cannot be questioned where, in the opinion of that court in the exercise of its inherent judicial discretion, it conscientiously believes that the ends of justice, under the circumstances, would otherwise be defeated. However, to justify the exercise of this power, the occasion for it must be very cogent, or, as some courts have said, there must be an absolute necessity. (38 A. L. R. p. 706.)

The task of this court is to decide whether under the circumstances and facts outlined the trial court was warranted in granting a mistrial. Was the expressed fear of the trial court of possible prejudice to the defendant reasonable and properly substantiated by a careful analysis of the existing situation? Was the discharge of the jury arbitrary, capricious and unreasonable in the application of its judicial discretion? These questions must be answered from a study of a cold printed record and with the paramount thought that this discretion was exercised in the heat, stress and strain of a criminal trial with its attendant tense atmosphere. This court is careful not to substitute its own discretion for the discretion invested in the trial court.

Judicial discretion has been defined as "that power of decision, exercised to the necessary end of awarding justice, and based upon reason and the law, but for which decision there is no governing statute or rule." Lord MANSFIELD stated: "Discretion, when applied to a court of justice, means sound discretion guided by law. It must be governed by rule, not humor; it must not be arbitrary, vague and fanciful, but legal and regular." (Bowers on Judicial Discretion of Trial Courts, § 10.)

Discretion may be, and is to a very great extent, regulated by usage or by principle which courts have learned by experience will, when applied to a great majority of cases, best promote the ends of justice, but it is still left to the courts to determine whether a case is exactly alike in every color, circumstance and feature to those upon which the usage or principle is founded, or in which it has been applied. (Bowers on Judicial Discretion of Trial Courts, § 10.)

Fortunately, there are some principles and rules established in the law that can be applied to the present situation. There is no absolute statute to guide a trial court in this situation, as to the proper procedure, but there are adaptable legal guides applied in

reasonably similar situations that suggest a proper procedure for the granting of a mistrial and discharge of a jury under circumstances such as existed in this case.

Newspaper coverage of criminal trials, both before and after the commencement of criminal trials, has broadened to a considerable extent in this modern day. The zealousness of the reporter in his coverage is brought about by knowledge that the general public demands these facts and his realization that in the performance of his duty to his paper the more colorful and sensational the article, the more readers it attracts and thus increases the circulation and enhances the commercial value of the paper. Many criminal trials are prefaced by a complete history of the defendant from the date of his birth to the date of his indictment based upon the charges for which he must face trial. Many of these articles minutely describe the actions of the defendant during his entire life, and in many instances completely discuss his past offenses and transgressions of the law. By this situation, which is necessarily maintained by our glorious principle of the freedom of the press, it is evident that the mass of the people from which jurors are drawn may be subject to the influence of these articles; it is clear that in some instances the ingenuity of the writers of these articles may cause opinion and prejudice to be formed by these literate groups either for or against a defendant.

The law of this State fully cognizant of this situation kept its faith in the basic procedure of American jurisprudence, the jury system. It realized that juries are comprised of men and women possessed as we all are of the frailties and weaknesses of human nature; men and women drawn from the active affairs of life in daily contact with many channels of influences, ideas, information and opinions. It was fully aware of the situation, but sincerely believed that these men and women infused with the American spirit would state under oath whether they had formed any opinion or prejudice and relied upon their answer after examination and scrutiny by the trial court as to whether or not they could lay aside such opinion and prejudice and return a fair and impartial verdict strictly according to the evidence presented, without fear or favor.

Thus, section 376 of the Code of Criminal Procedure was enacted by the Legislature of the State of New York and reads as follows: " Particular causes of challenge are of two kinds: 1. * * *; 2. For the existence of a state of mind on the part of the juror, in reference to the case, or to either party, which satisfies the court, in the exercise of a sound discretion, that such juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this Code

as actual bias. But the previous expression or formation of an opinion or impression in reference to the guilt or innocence of the defendant, or a present opinion or impression in reference thereto, is not a sufficient ground of challenge for actual bias, to any person otherwise legally qualified, if he declare on oath, that he believes that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied, that he does not entertain such a present opinion or impression as would influence his verdict."

Does it not seem self-evident that this doctrine of the law should have been applied to a reasonable extent in this case, before the drastic action of declaring a mistrial and discharging the jury? The trial court decided the motion without the slightest examination of the jury, and before any intimation on their part that they were prejudiced by the article against the defendant, or that they had even read the article. The return of the jury after the granting of the mistrial seems to have been purely ministerial and the record clearly shows that the trial court had absolutely established its position as to the status of the case before the general interrogatory contained in his explanation of the situation to the jury revealed that several of the jurors had read the article. The record shows that at no time was there any expression by any juror that the article in question had prejudiced him to the serious degree assumed by the trial court. It seems obvious that the trial court formed its own opinion of possible prejudice, and allowed the formation of this opinion without the seeking of any factual basis for its legal formation. In this respect, it has been stated that "judicial discretion is not a mental discretion, to be exercised *ex gratia*, but a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve, and not to impede or defeat the ends of justice."

The assumption of the trial court that if the mistrial were not granted the defendant might obtain a new trial or reversal on appeal and expressed in the statement: "Even if he were convicted, he could take advantage of that statement, because it is a prejudicial statement against his interest," is refuted by *People* v. *Lubin* (190 App. Div. 339; affd., 229 N. Y. 601).

. In that case almost the exact situation arose as in this proceeding. An article was published in the *Bronx Home News* indicating that the defendant was an habitual criminal. The trial court examined the jury as to whether this article would have any effect upon their determination and cautioned them that they should in no way consider anything contained therein in determining the case. The trial court allowed the case to continue, and the defendant was

convicted and an appeal taken. The Appellate Division affirmed the conviction, and in its opinion stated (p. 340): " The court did all in its power to minimize any possible mischief that might have been done by their having read this newspaper article. If the article had been published before the court sat and those called as jurors had seen it, it clearly would not disqualify those parties, provided they could swear they could and would give an impartial verdict notwithstanding their having read the article."

This court realizes the confusion existent in the mind of the trial court by the anomalous situation of the district attorney moving for a mistrial because of possible prejudice to a defendant. It is noteworthy and commendable but rare for a district attorney to seek a mistrial and request the court to discharge a jury solely for the benefit of a defendant who apparently does not want such aid or assistance and who vigorously opposes the altruistic motives of the district attorney. The defendant herein was content to have his fate remain with the " jury of his peers " that had been selected and see to a termination his " day in court " that had commenced before said jury.

Therefore, this court is constrained to decide that the trial court made an erroneous conclusion and judgment in granting a mistrial and effecting the discharge of the jury against the objections of the defendant; that the position taken by the trial court was unwarranted under the circumstances and not based upon the application of reasonable legal procedure; that important rights of the defendant were violated and waived aside, and that the improper discharge of the jury must result in sustaining the writ of habeas corpus, because the defendant has been once placed in jeopardy. It is important to the People of the State of New York that final judgment be passed upon the guilt or innocence of all defendants, but it is equally important that constitutional guaranties be preserved inviolate.

The writ of habeas corpus is sustained, and relator discharged.