Frank A. Gulotta, J.
This is an application by one J. Milford Kirkup, Jr., former Welfare Commissioner of the County of Suffolk, for a certificate of reasonable doubt, and for an order releasing him in bail pending the determination of his appeal by the Appellate Division of this department.
On October 8,1959 the said defendant was, by the verdict of a jury, found guilty of a violation of section 1864 — 20 counts — of the Penal Law, all felonies, and of a violation of section 580 of the Penal Law, a misdemeanor. On October 26, 1959 he was sentenced to serve a term of 90 days in the Suffolk County Jail on each of the 21 counts, the terms to run concurrently. Execution of the sentence was stayed until January 11, 1960 and defendant’s bail of $2,500 was continued. A notice of appeal has been duly served and filed and the appeal is being diligently prosecuted.
This was a lengthy trial involving numerous rulings on complex questions of evidence, and it seems to this court that upon the whole record there is presented an arguable question, worthy *535 of appellate review, as to whether the proof established beyond a reasonable doubt the guilt of this defendant.
There are two points in particular which I have in mind, which furnish a sufficient ground for granting a certificate.
On the final day of the trial a letter addressed to the defendant by a prominent public figure in Suffolk County, who had himself recently been convicted of a felony, was alluded to during the course of defendant’s cross-examination. It had nothing to do with the issues in the case on trial and it was not offered in evidence or even marked for identification.
The prosecutor nevertheless released the letter to the press and it was published therein.
The Trial Judge, understandably, took a serious view of this incident and the next morning he personally interrogated the jurors individually as to whether they had read the press report. They all denied having done so except Juror No. 8, who admitted having read the letter in the newspaper. Without further inquiry as to whether she had been influenced by it, and without permitting the defendant’s counsel to question any of the jurors, the court, on its own motion, discharged Juror No. 8 and seated one of the alternate jurors.
Exception was taken by defendant’s counsel to this procedure on both counts, i.e., on the denial of defendant’s motion for a mistrial without allowing him to interrogate the whole jury, and on the removal of Juror No. 8 and the seating of an alternate juror without defendant’s consent, and without proof of any facts to justify such substitution.
The defendant was entitled to a jury trial as a constitutional right under section 2 of article I of the New York State Constitution.
It is elementary that this does not mean any jury, but a particular jury chosen according to law, in whose selection he has had a voice. The case of Hildreth v. City of Troy (101 N. Y. 234 [1886]) was one in which it was argued that the rejection of a competent juror upon an erroneous theory of law was not error where the jurors who actually tried the case were competent. In rejecting this contention, the court said (p. 239): “ The judgment should be reversed. The statute makes elaborate provision for securing an impartial jury. It provides that the first twelve competent jurors drawn, who are indifferent and not discharged or excused, shall constitute the jury. The law prescribes the qualifications of jurors. The court cannot add to, or detract from them. It cannot itself select the jury, directly or indirectly. It cannot in its discretion, or capriciously, set aside jurors as incompetent, who the law declares are com *536 petent, and thus limit the selection of the jury to jurors whose names may be left. If this is done, a legal right is violated, for which an appellate court will give redress,” Section 387 of the Code of Criminal Procedure still provides: “ The first twelve persons who appear, as their names are drawn and called, who are approved as indifferent between the parties, and are not discharged or excused, must be sworn; and constitute the jury to try the issue.” (Italics supplied.) This principle is briefly adverted to in McDonnell v. Skidmore (266 App. Div. 869), holding that two jurors who had been sworn could not thereafter be set aside without sufficient cause.
Similarly the substitution of an alternate juror, which the defendant has also helped select, is regulated by law, to wit, section 358-a of the Code of Criminal Procedure, wherein it is provided that this may be done only when a juror die, become ill or for any other reason he is unable to perform his duties.
Juror No. 8 could only have been covered by the last alternative, assuming that it is intended to encompass a juror who has become unfairly prejudiced by an element outside the case, but here no effort was made to determine whether she had been so prejudiced.
Beading the newspaper would not necessarily prejudice her and it has been held that such misconduct is not ground for a new trial. (People v. Lubin, 190 App. Div. 339, affd. 229 N. Y. 601; People ex rel. Totalis v. Craver, 174 Misc. 325.) It follows, a fortiori, that an individual juror may not be removed, simply for this cause.
The defendant’s right to have the trial continued to a conclusion before the original jury selected by him is so firmly intrenched in our law, that it has been held that the premature ending of a trial without a verdict, by a Judge on his own initiative, when he discharged the jury while they were in the midst of their deliberations, prevents the defendant’s retrial on the same charge, since to do so would constitute double jeopardy. In People ex rel. Stabile v. Warden of City Prison (139 App. Div. 488, 493, affd. 202 N. Y. 138), the Appellate Division stated: ‘ ‘ The People and the defendant are alike entitled to the uninterrupted deliberation of the jury.”
The rule should'be the same where the change in the personnel of the jury, contrary to statute, takes place before deliberations start and the Court of Appeals in the above-cited case at page 151 indicates this to be so in the following quotation: “ If the jury is discharged without the defendant’s consent merely because the public prosecutor is not prepared with his evidence, the defendant is entitled to his discharge because he has once *537 been put in jeopardy within the constitutional provisions. (People v. Barrett, 2 Caine’s Rep. 304; Grant v. People, 4 Park. Crim. Rep. 527; Klock v. People, 2 Park. Crim. Rep. 676.)
The second point involves the sufficiency of the evidence.
The opinion of the Court of Appeals in this case published, on the motion to dismiss the indictment, in 4 AT Y 2d 209 establishes that, for the purpose of section 1864 of the Penal Law, the property right which the county acquired in these drugs when they were delivered to the County Home was of sufficient substance so that the defendant could be found guilty of having wrongfully deprived the county of “ possession ” although the county had neither ordered nor paid for them.
Implicit in this is the requirement that the defendant know of the existence of such a property right, before he can be said to have wrongfully interfered with it. This is not to be confused with the precept that everyone is presumed to know the law. Granted that he is, but it does not follow that he is presumed to know of the existence of a property right so hazy and nebulous that many lawyers would have difficulty in defining it.
It is said that the county was a gratuitous bailee of these drugs and as such was under a duty not to deal with them in a grossly negligent manner, but this is a duty rather than a right. As to what these rights may be, Story in his work on Bailments discusses this subject under the topic “ Deposits ” which is defined as a naked bailment of goods to be kept for the bailor without reward. In discussing the extent of such rights, at section 89 he states the general rule to be that the depository has no right to use the thing deposited, without the expressed or implied consent of the depositor. As an example of how limited the rights of a gratuitous bailee are, in section 90 he concludes that books if left in a locked chest may not be used, but if left in an open box he supposes that there is an implied assent to read them.
In the ordinary case of an indictment under this section, the property right interfered with is so substantial and self-evident that the wrongful intent may be inferred simply from the doing of the act. That is not so where the property right itself is so obscure.
For instance, I do not suppose that if a package had been delivered to the County Home by the Post Office Department by mistake, thus constituting it a gratuitous bailee, that the defendant could be found guilty of this particular felony even though he released it to an imposter, absent a showing that he knowingly deprived the county of a property right he was aware of.
*538 Whether there was sufficient proof of defendant’s wrongful purpose vis-a-vis the county should not be confused with his undoubted knowledge that Freistadt, Rubin et al. might be putting something over on the drug companies.
The essence of this felony charge rests on the first type of knowledge and proof of it is sufficiently doubtful, it seems to me, to justify the issuance of a certificate.
Since this statute proscribes the willful audit of a false claim against the county, or the ivrongful interference with property held by the county, it would seem to require a specific intent to do the county a disservice as distinct from a general purpose to do an act which might be reprehensible for other reasons.
Were this certificate to be denied it is probable that, in the ordinary course of events, this defendant will have served his sentence before his appeal could be determined. Should there be a reversal in the appellate court society could not recompense him for any time he will have served in jail.
Certificate of reasonable doubt is granted. Bail is fixed in the sum of $2,500.