■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK RUSSELL, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County (Moskowitz, J.), rendered September 16, 1982, convicting him of murder in the second degree, manslaughter in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

On November 27, 1980, at about 1:40 A.M., defendant followed Mary Ann Nicot as she walked through a school yard. Nicot looked behind her, observed defendant, and kept walk-

ing. A few moments later, after a short struggle, defendant grabbed Nicot's purse and ran. Nicot had further opportunity to observe defendant as they struggled over her handbag. She recognized defendant from having seen him around the neighborhood on several prior occasions.

After defendant ran away, Hilton Rivera looked out of the window of his apartment and asked Nicot what had happened. After explaining the incident, Hilton Rivera and Nicot walked in the direction in which defendant had fled. A short distance away, they heard noises coming from inside an abandoned building. As they approached the entrance to the building, defendant appeared at the doorway with a gun, and from a distance of only one foot, he held the gun to Hilton's head and fired a shot which later resulted in Hilton's death.

Nicot immediately ran to Hilton's home and informed his brother Wilbur Rivera that Hilton was shot. Wilbur then ran to the abandoned building where he found his brother lying on the ground. While he picked up his brother, defendant emerged from the building carrying a gun. Wilbur recognized defendant as a person he had seen around the neighborhood on previous occasions. Defendant approached Wilbur and stated "I just shot Chino's brother". Wilbur replied "I'm Chino. Did you shoot my brother?" Defendant fled. A short time later Nicot returned to the abandoned building with a police officer. Just inside the building they discovered items from her purse scattered around the floor inside. Nicot provided the police with a detailed description of both defendant and his clothing. Defendant was ultimately apprehended, tried and convicted of the aforementioned crimes.

We have reviewed the record and find more than ample evidence to support defendant's conviction (see, People v Kennedy, 47 NY2d 196). The identification testimony was strong, especially in view of the fact that defendant was previously known to both identification witnesses. In comparison, the alibi testimony presented by defendant's four witnesses was confusing, contradictory and disjointed. The jury properly made a determination based upon the credibility of the witnesses, and that determination will not be disturbed on appeal (see, People v Gruttola, 43 NY2d 116).

In addition, we find that the court properly protected both defendant's and the People's right to a fair trial by dismissing a juror who was alleged to have slept through various portions of the trial testimony. The court has the obligation to dismiss a juror whom it finds to be "grossly unqualified to serve in the

case" (CPL 270.35). A juror who has not heard all the evidence is grossly unqualified to render a verdict in the case (see, *People v Dupont,* 111 Misc 2d 328; *United States v Cameron,* 464 F2d 333).

The fact that the juror, when questioned by the court, denied having been asleep does not necessarily mean that the court had no choice but to accept that response and retain that juror. In this case, there was strong evidence which suggested that the juror had missed portions of the testimony. A student legal assistant from the District Attorney's office informed the court that throughout the trial, he frequently observed the juror with his eyes closed. An Assistant District Attorney who was observing the trial informed the court that she observed this juror sound asleep, that his eyes were closed, his head was down, he was breathing in a deep rhythmic pattern, and he did not react to external stimuli in the courtroom. The juror in question told the court that another juror had asked him whether he was asleep during the testimony, and he responded that he was not asleep. The court stated that it made its own observation that the juror had his eyes closed, but because of its distance from the juror, it could not tell whether or not the juror was asleep. In view of the conflicting evidence, the court decided to credit the statement of the Assistant District Attorney, and the juror was replaced by the first alternate. We find that defendant suffered no prejudice as a result of the dismissal of the juror and it cannot be said that the court abused its discretion when it ordered the substitution (see, *United States v Smith,* 550 F2d 277, *cert denied sub nom. Wallace v United States,* 434 US 841; *United States v Maxwell,* 383 F2d 437; *cert denied* 389 US 1057). As defendant helped select the alternate juror, he was still tried by a jury in whose selection he had a voice, and equally important, by a jury which heard all of the evidence (see, *People v West,* 62 NY2d 708).

The other contentions raised by defendant, including those contained within his *pro se* supplemental brief, have been examined and found to be without merit. Mangano, J. P., Thompson, O'Connor and Weinstein, JJ., concur.