■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KERMIT BUFORD, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (O'Dwyer, J.), rendered June 3, 1982, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Judgment affirmed.

The trial court did not abuse its discretion in discharging the foreperson of the jury because she had seen two of the prosecutor's witnesses (including the defendant's accomplice) enter an automobile together after leaving the courthouse. The juror had expressed concern about a possible "conspiracy", and answered equivocally when asked if anything she saw might affect her deliberations by replying "I don't think so". An appellate court, even under the exacting "grossly unqualified" standard of CPL 270.35 required for the discharge of a juror, generally should not disturb the determination of the trial court with respect to the qualification of that juror in questionable cases. The trial court is in the best position to assess the demeanor, attitude and voice inflection of such a juror, which may be of greater value than the juror's affirmative response when questioned whether he or she could decide the case impartially and put his or her feelings aside. This is especially true in the case at bar, where the juror's response was less than unequivocal and convincing (see, People v Meyer, 78 AD2d 662). Hence, the trial court did not err in dismissing the foreperson of the jury (see also, People v Rentz, 67 NY2d 829).

In addition, we find that there was independent evidence corroborating the testimony of the defendant's accomplices sufficient to prove the defendant's guilt beyond a reasonable doubt (see, CPL 60.22), particularly an admission by the defendant to a prosecution witness that he participated in the

murder of the victim in this case. The defendant's contention that the prosecutor was prohibited from discussing the underlying facts of his prior convictions is belied by the record of the court's *Sandoval* hearing determination which does not contain such a limitation. The fact that evidence of the defendant's prior heroin addiction and mainlining of cocaine were permitted into evidence was not improper, since the purpose of the admission of this evidence was to tend to show that while the defendant claimed that he was afraid of sharp knives because he was a hemophiliac, he was not afraid to inject himself with drugs by using needles. We have reviewed the defendant's other contentions and find them to be without merit. Weinstein, Lawrence and Kooper, JJ., concur.

Bracken, J. P., dissents and votes to reverse the judgment and to order a new trial, in a memorandum, with which Eiber, J., concurs. In my view, the discharge of a sitting juror over the defendant's objection constituted an abrogation of his constitutional right to a jury trial. Accordingly, I would reverse the judgment of conviction and order a new trial.

During the defendant's trial, the foreperson of the jury reported that she had seen two prosecution witnesses, one of whom was the defendant's accomplice, leave the courthouse and drive off together in an automobile. The trial court conducted an inquiry of the foreperson in the presence of the defendant, his attorney and the prosecutor. In response to questions posed by the court and respective counsel, the juror indicated that she had been alone at the time of her observations and had not discussed what she had seen with anybody else. Initially, her observations had led her to believe that the two witnesses were involved in a kind of "conspiracy", but she had inquired of a court clerk and learned that witnesses were indeed permitted to speak with each other. She stated that nothing she had seen would affect her deliberations, and she would be able to decide the case on the facts, and be fair to both sides. Over the objection of defense counsel, the court granted a motion by the prosecutor to discharge the foreperson, stating, *inter alia,* that "there might possibly be some inability on the juror's part in failing to deliberate in an appropriate manner".

Upon this record, the trial court's discharge of a juror was improper. Once a trial jury has been sworn, the court must discharge a juror when it "finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of

a mistrial" (CPL 270.35). The determination to dismiss a sitting juror is one which is within the discretion of the trial court and, where a sitting juror is properly dismissed for substantial misconduct or as being grossly unqualified, and an alternate juror is substituted (CPL 270.35), the defendant, having participated in the selection of the alternate juror, will still be tried "by a jury in whose selection he had a voice" *(People v Russell,* 112 AD2d 451, 453; *People v Pattison,* 97 AD2d 852, 853). However, the discretion conferred by CPL 270.35 is not unfettered, and must be exercised cautiously inasmuch as the erroneous discharge of a competent juror implicates the defendant's constitutional right to a jury trial (NY Const, art I, § 2): "this right does not guarantee a trial by any jury, but rather a particular jury chosen according to law in whose selection defendant has had a voice *(Hildreth v City of Troy,* 101 NY 234; *People v Freistadt,* 23 Misc 2d 534). The trial court may not itself select the jury, either directly or indirectly, by dismissing as incompetent jurors who the law declares are competent *(Hildreth v City of Troy, supra,* p 239)" *(People v West,* 92 AD2d 620, 622 [dissenting mem, Mahoney, P. J.], *revd for reasons stated in dissenting mem at App Div* 62 NY2d 708; *see also, People v Wilson,* 106 AD2d 146, 150; *People v Ivery,* 96 AD2d 712).

Clearly, the actions of the foreperson in this case cannot be characterized as misconduct, let alone "misconduct of a substantial nature" (CPL 270.35). In fact, it appears that once the juror had observed the two prosecution witnesses departing from the courthouse together, she merely followed the court's prior directives to report any incidents which might tend to improperly influence her.

Nor can it be said that the foreperson was rendered "grossly unqualified" (CPL 270.35) to serve as a juror in the case by reason of her observations and her reaction thereto. A juror is grossly unqualified to serve when " 'it becomes obvious that * * * [she] possesses a state of mind which would prevent the rendering of an impartial verdict' " *(People v Galvin,* 112 AD2d 1090, 1091, quoting from *People v West,* 92 AD2d 620, 622 [dissenting mem, Mahoney, P. J.], *supra, see also, People v Meyer,* 78 AD2d 662, 664). Thus, a juror may properly be found to be grossly unqualified where he or she is acquainted with a member of the defendant's family *(People v Galvin, supra),* or with a witness *(People v Pattison,* 97 AD2d 852, *supra; People v Landskroner,* 91 AD2d 755; *People v Meyer, supra)* or where a juror has been asleep and has not heard all of the evidence in the case *(People v Russell,* 112 AD2d 451,

*supra).* However, even where a juror expresses dissatisfaction with the manner in which the trial has been conducted, or with the conduct of the court or of counsel, it is reversible error to discharge such a juror as being grossly unqualified where, upon inquiry by the court and respective counsel, the juror asserts that he is capable of following the court's instructions and rendering a fair and impartial verdict based solely upon the evidence and the law *(People v West, supra; People v Ivery,* 96 AD2d 712, *supra).* Similarly, where a juror reports that he knows a witness's family and may have known the witness himself, dismissal of that juror is not warranted where the court's examination of the juror establishes that he is not biased thereby *(see, People v O'Connor,* 106 AD2d 900).

In this case, the record does not support a finding that the foreperson was grossly unqualified to serve. There is no claim that she was acquainted with the witnesses or that she was dissatisfied with the manner in which the trial was proceeding or with the conduct of the participants. Although she initially had reservations about the propriety of two prosecution witnesses conversing and leaving the courthouse together, once she was advised that such conduct was not improper, she stated that her observations would not impair her ability to deliberate in the same manner as her fellow jurors and to decide the case fairly and on the facts. Moreover, the trial court's assessment that "there might possibly be some inability on the juror's part in failing to deliberate in an appropriate manner" was speculative and equivocal is insufficient to warrant a finding that the juror was grossly unqualified to serve. Under these circumstances, it was error to discharge the foreperson, and, because that error abrogated the defendant's constitutionally guaranteed right to a jury trial, there should be a new trial *(People v West, supra; People v Ivery, supra).*