BROWER and another *against* PEABODY, impleaded, &c.

On the 7th of October the plaintiffs, in the city of New-York, contracted to sell to Lovett & Co., fifty barrels of potash, to be paid for on delivery; and thereupon Lovett, one of the purchasers, engaged from the owners of a vessel about to sail for Liverpool freight for the potash. On the 9th of October, the plaintiffs, pursuant to the contract of sale, sent the potash on board the vessel, and took from the defendant, Peabody, who was master, receipts therefor in their own names; and on the same day Lovett stole the receipts from the plaintiffs, and, on presenting them to the owners of the vessel, procured a bill of lading for the potash in his own name, upon which and a bill of exchange drawn against the shipment, he procured an advance to about the

value of the property. Lovett & Co. were insolvent and contracted for the property, intending not to pay for it; and the plaintiffs, within a few days after the bill of lading had been procured, demanded the potash of the master, who declined to deliver it, and it was transported to Liverpool, and delivered pursuant to the bill of lading. In an action by the plaintiffs against the master; *Held*, 1st, that the plaintiffs had not parted with their title to the potash; and 2d, that the master was liable to them for its value, notwithstanding the bill of lading was given to Lovett and the advance made to him upon its credit, without notice and in good faith, and although, by the custom of merchants and shipowners in New-York, bills of lading are made out and delivered to the person producing the ship's receipts, without reference to the party named in them, and without any assignment of them from such party.

Brower *v.* Peabody, 18 Barb. 599, reversed

ACTION commenced in the supreme court on the 15th of October, 1850, to recover possession of fifty barrels of potash. The plaintiffs were John Brower and Jacob Cram; the defendants were Lovett and Bethune, who were doing business under the firm name of Lovett & Co., and Peabody, who was the captain of the ship Fidelia. Peabody alone appeared and defended. The action was referred to and tried by Lucius Robinson, as referee. He found the following facts: That on the 7th of October, 1850, Brower, on behalf of the plaintiffs, made an agreement with Lovett & Co., to sell to that firm fifty casks of potash, for $1657.08, being the market value thereof, to be paid in cash on the delivery thereof. That at the time this agreement was made, and subsequently, Lovett & Co. were insolvent, and did not intend to pay for the potash; and that, after making the agreement, Lovett, one of the firm, went to the office of Marshall & Co., who owned the ship Fidelia, of which the defendant, Peabody, was master, and which was then up for a voyage to Liverpool, and engaged freight for the potash on board the vessel. The plaintiffs, in pursuance of their agreement to sell the potash, sent the same on board the vessel by their carman, who took receipts in the usual form of ship receipts from the mate of the vessel for the potash. These receipts, as to thirty-eight casks, stated them to have been received from John Brower,

and as to the other twelve, the receipts did not state from whom they were received. The delivery of the potash on board the vessel, was completed at about ten o'clock on the morning of the 9th of October, and the carman thereupon immediately delivered the receipts to Brower, by laying them upon the desk at which he was writing at his office; that immediately after, Lovett entered the office and feloniously took and carried away the receipts. During the same day Lovett presented these receipts at the office of the owners of the vessel and procured a bill of lading in his own name for the potash, drew a bill of exchange against the shipment, and on the same day assigned the bill of exchange and the bill of lading to one Hasluck, who advanced to him in good faith thereon $1453.33. Peabody, the owners of the vessel, and Hasluck, all acted in good faith in said transactions, and had no reason to suspect any fraud on the part of Lovett; and they had no notice of such fraud, until two or three days after the bill of lading had been delivered, and the money advanced to him. The offices of the plaintiffs and the ship owners were in New-York, but a short distance apart, and the vessel was lying in the East river; and the plaintiffs might have given notice of the taking of the receipts at the ship, or the office of the owners within ten minutes after they were taken, but the plaintiffs did not give such notice until two or three days thereafter, and in the meantime were endeavoring to find Lovett, whom they saw on the 10th of October, when they required him to pay for the potash, or surrender the receipts. The referee also found, that it was the uniform custom and usage among merchants and persons engaged in the shipping business in the city of New-York, to deliver bills of lading to any person who produced the ship's receipts, without reference to the names mentioned in them, and without any endorsement or assignment of the receipts, such receipts being regarded by such custom and usage, and in the course of trade merely as memoranda by which to make out the

Brower *against* Peabody.

bills of lading, and as acknowledgments that the property described in them had been placed on board the ship. It was admitted by the pleadings, that after the transactions above mentioned, and before the commencement of the suit, the plaintiffs demanded the potash from Peabody and from Lovett, each of whom refused to deliver the same to them.

The referee's conclusions of law were, that from the facts found the plaintiffs must be presumed to have had knowledge of the aforesaid custom and usage, and that they were chargeable with unreasonable negligence in not having given immediate notice to Peabody, or the owners or agents of the ship, that the receipts had been wrongfully taken by Lovett; that the purchase of the potash by Lovett & Co. was fraudulent on their part, and that the plaintiffs were entitled to judgment against Lovett and Bethune for its value with interest, being $1821.40; and that Peabody was not liable to the plaintiffs, and was entitled to judgment against them for costs of the action. The plaintiffs excepted to the portions of the ruling of the referee which were against them. Judgment was entered in accordance with the decision of the referee which was affirmed by the supreme court at a general term in the 1st district. (*See* 18 *Barb.*, 599.) The plaintiffs appealed to this court from so much of the judgment as was in favor of Peabody.

*J. W. Gerard*, for the appellants.

*Samuel Beardsley*, for the respondent.

GARDINER, C. J., delivered the opinion of the court.

There was no delivery of the property, the subject of this suit, to Lovett & Co., the fraudulent purchasers. The terms of the contract were cash on delivery; and there is no allegation or proof that the agreement was modified or changed in the slightest particular. Under this agreement,

Brower *against* Peabody.

as the referee finds, the fifty barrels of potash were deli-
vered, not to the purchasers, but on board the ship of which
the defendant was master, and receipts taken, as the owner
alleges, in the name of the plaintiff Brower. The answer
of Peabody states " that the receipts so given contained a
statement of the receipt in good order from the said John
Brower on board the ship Fidelia, of the said fifty casks of
potash, describing them by their marks;" and in reference
to the usage, he avers " that the receipts for the goods and
merchandise, so delivered on board such ship, are given by
the master of the ship or his agent to the person delivering
the same, and that bills of lading are not given to the indi-
viduals who have engaged freight therefor, nor to any other
person, except on the production and surrender of said
receipts to the master or his agent; and upon such produc-
tion and surrender, bills of lading are forthwith given."

Looking at the acts of the plaintiffs in the light of the
contract, and the custom thus established, it is manifest
that there was no intention to deliver the property to
Lovett & Co., and that the owners never for an instant
parted with the possession of the ashes, but placed them
on ship board, in their own names, and took and retained
in their custody the evidences of their title, furnished by
the defendant, Peabody, which gave them the absolute con-
trol of the property, and bound the ship master to execute
or withhold the bills of lading according to their direction.
To call this a delivery to Lovett & Co., or a *quasi* delivery,
is a palpable misnomer. Stopping here, we find the pro-
perty in the ashes unchanged. They were subsequently
demanded of the defendant, who refused to recognize the
right of the plaintiffs, and disposed of them in Liverpool
by the orders of other persons. The *onus* then devolves
upon the defendant to establish a legal right thus to inter-
fere with the property of the plaintiffs without their con-
sent and against their known wishes. He relies upon the
fact that the receipts were on the same day presented at

the office of the owners of the ship by Lovett, who pro-cured a bill of lading in his own name ; and in the same sentence the referee also finds, that the receipts were stolen by Lovett from the office of the plaintiffs. The act of Lovett, through which the defendant is compelled to make title, was a felony, for which he could have been indicted, and convicted under the 66th section of the article " Of robbery, embezzlement and larceny." (2 *R. S.*, 679.) If the custom or usage which lies at the foundation of the defence is valid, the receipts were property, and the value of the commodity affected or transferable by the instrument would " be deemed the value of the article so stolen." (*Id.*, § 66.) An argument is unnecessary to prove that a title thus derived cannot be urged to the prejudice of the true owner. The familiar principle is thus stated in *Saltus* v. *Everett* (20 *Wend.*, 267) : Property in things mova-ble can only pass from the owner by his own act and consent, except in those cases only where such owner has, by his own direct voluntary act, conferred upon the person from whom the *bona fide* vendee derives title, the apparent right of property as owner, or of disposal as agent. No fact is found or exists in this case to make it an exception to the general rule. The receipts, although recognized as *prima facie* evidence of property in the thing receipted, in those who have them in possession, do not, it is presumed, enter into the currency, and like bank notes become the property of a *bona fide* holder.

It is said that nothing but the receipts were stolen ; the ashes were untouched. The defendant converted the pro-perty ; and this act, apparently unauthorized and tortious, he justifies, under evidences of title stolen from the possession of the owners. It seems to have been forgotten that the plaintiffs are not required to prove a negative ; but the defendant must, in some way, show affirmatively a transfer of the property in bar of the action. No reliance was placed upon the facts occurring subsequent to the commis-

sion of the felony, by the learned counsel for the respondent. They can have no influence upon the decision.

It may be true, as a matter of fact, as the referee seems to have found as a conclusion of law, that the plaintiffs would have acted more wisely by giving immediate notice to the ship owners, instead of pursuing the thief and reclaiming their property; but an error in judgment of this sort, if it was one, cannot divest them of their property or create a title in the defendant.

The judgment in favor of Peabody should be reversed and a new trial ordered.

Judgment accordingly.