By the Court:

Freedman, J.
The first question to be determined is whether George B. Buell was a factor or agent of the Florence Sewing Machine Company -within the meaning of the so-called Factors’ Act. This act, passed April 16,1830, is entitled “An act for the amendment of the law relative to principals and factors or agents ” (Laws 1830, p. 203; Edmond’s. Statutes at large, vol. iv, p. 461).
It is necessary only for the present purpose to consider the effect and meaning of the third section of said act, which is as follows:
“ Sec. 3. Every factor, or other agent, intrusted with the possession of any bill of lading, custom-house permit, or warehouse-keeper’s receipt for the delivery of any such merchandise (meaning the merchandise referred to in the first section of the act, consisting of merchandise shipped in the name of the factor or agent), and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise _for the. purpose of sale, or as a security for any advances to le made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument, or other obligation in writing given by such other person upon the faith thereof.”
A bare inspection of the act 'shows that the legislature did not intend thereby to provide a remedy for all those hardships which have accrued to innocent persons by dealing with people having the apparent ownership of goods, as if they were the real owners; but the intention of the legislature was only to deal with cases in which innocent persons had been taken in, in .such dealings, by the factors -or agents of the owners of the goods, and *437 such factors and agents must have been intrusted with the possession, &c.
The words “ factor or other agent” refer to agents employed to sell goods or merchandise consigned or delivered to them by or for their principals, for a compensation commonly called factorage or commission, who may sell for their principals in their own names, as well as in the name of their principals, who are individually intrusted with the possession, control, and disposal of the goods to be sold, and who have a special property in and a lien upon the goods.
Now the facts in the case under consideration are as follows:
The Florence Sewing Machine Company had their manufactory and chief place of búsiness at Florence, Mass., and from September, 1865, to the time of the trial in this action, kept a store for the exhibition and sale of their machines at No. 505 Broadway, in the City of New York. George B. Buell had charge of the New York store from September, 1865, until about the month of April, 1867. During that time he had the entire management of the business of said store, tinder the supervision of the company’s officers, and subject to such instructions as the said officers saw fit from time to time to give him; he was called the Principal Agent of the Company for the State of New York; minor agencies in other parts of the State reported to him and transmitted their orders through him to the company; he was permitted to hire the clerks and other employes necessary for carrying, on the business of the store, and for his own services received from the company a salary of three thousand dollars per annum.
The business at the store, however, was carried on in the name of the plaintiffs and under the supervision of plaintiffs’ officers; the plaintiffs’ sign was over the store; all goods sent to the store from the manufactory were directed to the “ Florence Sewing Machine Company, No. 505 Broadway.” The sales were made in the name of the company; the bill-heads had the company’s name upon them as the name of the person selling the goods; the expenses of the store were paid with money derived from *438 sales; a regular account was kept between the principal establishment at Florence and the store in New York, and the proceeds from sales not used in defraying the expenses of the store in. New York were to be remitted to the Florence establishment.
It cannot, therefore, be said that the machines sent to the store in New York were consigned to or delivered to George B. Buell personally, or that the plaintiffs intended so to consign and deliver them. Buell did not receive any documentary evidence of title to them, which, by the established usages of trade or otherwise, gave him the entire and exclusive control of the delivery of the machines, upon arrival, to himself as the person holding such documentary evidence, nor had he the possession, actual or in law, of them. lie had not even a right to the possession in himself; he had no special property in or lien upon the machines for his services; he was a salaried officer; he had no right to dispose of them as his own in any manner, and no authority to exercise even ostensible acts of ownership over them. On the contrary, the machines, while at the store in New York, were just as much in the possession, and under the direct control of the company as they would have been if said store had constituted only an exhibition room inside the walls of their manufactoiy. Buell was, in effect, a mere employe, a clerk, and as such had only the charge and custody of the goods for the special purpose of exhibiting them and selling them in the name of the Florence Sewing Machine Company, as an article manufactured by said company specially, and for the account and benefit of said company, while the possession and property remained in the company. Upon this state of facts it is to be determined whether Buell should be considered as a factor or agent, intrusted with the possession of the goods within the true intent and meaning of the Factor’s Act. It is true, a factor empowered to sell is always an agent. For whenever any person competent to do an act employs another person to do it for him, the latter is an agent (Story on Cont., secs. 277, 295). But there are many kinds of agents who *439 are not factors, and there is a broad distinction between factors and agents to sell.
First—Factors are entitled to á general lien for all advances and charges upon oil the goods of the principal in their hands, while mere agents have, as such, only a special lien, and no general lien, unless by usage in a particular trade or business, or by force of some special agreement (id., 327).
Second—By the common law a factor may vend the property, or pledge it for advances actually made in his own name or in that of his principal, as he may elect; and he is compensated, usually, by a commission or percentage upon the gross proceeds of sales. But -an agent sells in the name of his principal, and charges for his services such sum as they may he worth, or, by agreement, may have a salary, a percentage, a specified sum, or nothing (id.).
Certainly Buell was not a factor of - the plaintiffs. But he was their agent in the sense that he was authorized to do for them certain acts which they could have done for themselves, i. e., to sell machines. He was then within the letter of the act, so far as the mere question of agency is concerned. But was he an agent intrusted with the possession of the goods for the purpose of sale as contemplated by the spirit of the statute? For if he was not, the pledge is not protected by the act. The meaning and scope of the act in this regard seems doubtful, and, of course, that doubt also extends, by necessary connection, to the meaning of the word “ agent,” as used in the act. For instance, a salesman in a store is an agent empowered to sell, and the goods, in many cases, are actually in his hands when offered for sale. Literally, then, or, in more technical language, by the letter of the act, such a salesman may sell or pledge the goods as owner, and the purchaser or pledgee will take a good title or right of possession as such against the principal of such salesman.
But it is not reasonable to suppose that the legislature designed the act to have that effect, although in letter they may have said so. The act, therefore, must be construed in accord *440 anee with the real wish or intention of the legislature. For, although a thing is within the letter of a statute, it is not the law, unless it be within the intention of the law-makers (Plowden, 18, 88; 2 Just., 64; 5 Tenn. R., 449 ; 3 B. and Ald., 266; 3 Cowen, 89 ; Bac. Abr., tit. stat. I., 5,10; 15 Johns. R., 358;. 3 Barb., 429 ; 1 Kent Com., 463-4). Statutes are likewise to be construed in reference to the principles of the common law; for it is not to be presumed that the legislature intended to make any innovation upon the common law further than the case absolutely required.' In the application of these well-settled rules to the case before me, I have arrived at the conclusion! that the legislature designed to protect purchasers and pledgees who should, in good faith, obtain goods from persons who are—
First—Agents, who again are
Second—Empowered to sell, and
Third—Intrusted with the entire possession and absolute conn trol of the property for the latter purpose; such a possession and control, for instance, as travelling peddlers have, or persons occupying for themselves places of business other than those of the owner of the.goods; in short, such a possession and control as would enable the agent to sustain an action of replevin to recover the possession of the property in case he should be deceived by a stranger.
If that construction is correct, it would seem to follow that the pledgee -in this ease is not protected by the statute. For the property was in the possession and custody of the plaintiffs as owners while it was in their factory, while in transitu to Kew York, and while in their store in this city, although Buell was authorized to sell it. As Buell received a salary as full compensation he had no charges upon the property, nor right of possession, and his actual possession was that of his principal, until he pledged the goods. A mere discharge of Buell from the plaintiffs’ employment would, ipso facto, have divested him of any possession he might have of the goods. FTo proceedings in replevin would be necessary. But such proceedings would be requisite as against an agent in exclusive possession, {hough he *441 was discharged as agent, and even though he had no lien for advances or charges.
But, even if Buell took such possession of the property as to divest the owners of their possession, he did not thereby become possessed (exclusively) of the goods for iliepwrpose of sale within the meaning of the act. The great object and intent of the statute is to protect innocent persons who may purchase or become pledgees of property intrusted by the owner to the exclusive possession, separate and distinct from the owner’s, of an agent for the purpose of sale; not to enable an agent and a purchaser or pledgee to collude and defraud the true owner, by virtue of the letter of the statute. Such innocent persons dealing with such agents as are contemplated by the statute, may “deem” the said agents to be the true owners of the property. But it cannot be that the legislature designed that a purchaser or pledgee who should take the property with full and actual knowledge that the vendor or pledger is only an agent, should have a right to deem or believe him to be the true owner. It appears to me more reasonable to suppose that they intended merely to protect bona fide purchasers and pledgees without notice of property found by them in the exoluswe possession of persons who, in fact, had been intrusted therewith for the purpose of sale. In the case under consideration, S. L. Woodhouse, the original pledgee, was fully aware that Buell was only the agent of the plaintiffs in charge of plaintiffs’ store. When ex amined as a witness at the trial, he testified, in response to the question addressed to him, where he supposed Buell was to get the machines from if he did not get them of the Florence Sewing Machine Company, that he presumed “ that, in his accounts with the company, Buell took the machines from the company with the understanding that they were to be sold to him.”
For these reasons, Buell cannot be considered as a factor or agent intrusted with the possession of the goods within the true intent and meaning of the 'provisions of the Factor’s Act (Stevens v. Wilson, 6 Hill, 512; same case, 3 Denio, 472; *442 Zachrisson v. Ahman, 2 Sandf., 68; Cook v. Beal, 1 Bosw., 497; Cartwright v. Wilmerding, 24 N. Y., 521).
The fact that, either with or without the knowledge and acquiescence of the plaintiff, Buell kept a bank account in his own name in the Tradesmen’s Bank, in which he deposited with his own moneys the proceeds of the sales at the store, and that he paid the rent and all the expenses of the store by checks drawn against said account, can make no difference in this respect. This is an independent question, which does not in any way affect his original powers in regard to the sale and disposition of the goods.
The next point to be considered is whether George B. Buell did or did not commit the crime of larceny in obtaining the machines in litigation from the plaintiffs and converting them to his own use.
On the 31st day of July, 1866, Buell procured, for his own individual use, from one S. L. Woodhouse, a certain promissory note of said Woodhouse for five thousand dollars, bearing date of said day, payable ninety days thereafter, and agreed to protect the said note when due, and to place in the hands of said Woodhouse eight thousand dollars’ worth of sewing-machines as security therefor. This agreement was proved on the trial by the receipt from Buell to Woodhouse, in the handwriting of Buell, and written upon a sheet of paper bearing the caption “Florence Sewing Machine Company, Ao. 505 Broadway, Aew York.” In order to obtain the machines, Buell, on the same day, wrote to the plaintiffs, at Florence, Mass., for thirty machines, and falsely and fraudulently represented to the plaintiffs that he had received an order for said machines from Dodd & Hill, and that the machines were to be’sent to that firm to the West Indies. Upon the same false statement, Buell, on the 2d day of August, ordered twenty-three more machines, and, on the 22d of October following, still thirty more, making eighty-three machines in all. They were accordingly shipped by the company to Aew York, marked “W., care Florence Sewing Machine Company, Ao. 505 Broadway, Aew York;” they, how *443 ever, never reached the Broadway store, but were converted, on their arrival in New York, by Buell to his own use, and turned over to Woodhouse for Buell’s individual benefit, and in accordance with the previous arrangement between him and Wood-house. It is conceded that the representations and statements upon which Buell obtained the said eighty-three machines were false.
The remaining seventeen machines of the one hundred machines, for the recovery of which this action is brought, were in the company’s store in Broadway; and Buell, who, as I have before stated, was in effect a mere employe or clerk, had the special charge and custody of them for the purpose of exhibition and sale in the name of and for the account and benefit of the Florence Sewing Machine Co. In November, 1866, they were taken away from plaintiffs’ store by Buell’s direction, by a cart-man unknown to the other employes in the store, and not in the regular course of business. None of the other employes in the store, consisting of a book-keeper, shipping-clerk, an adjuster, a salesman, a porter, and some ladies to wait on the store, knew any thing about their destination or the purpose for which they were taken out. Buell never gave an account of them, to be put by the book-keeper on the books of the company, as the usual course of business required, but simply ordered the bookkeeper to count them as on hand. It was afterwards discovered that these seventeen machines had also been pledged by Buell to S. L. Woodhouse as security for his personal debt. Buell had previously ordered the book-keeper, whose business it was to know what stock arrived, and who had seen the invoices for the eighty-three machines referred to, to count them as on hand. All the machines obtained by Buell for his own use were thus' put in together, eighty-three packed for shipment and seventeen in skeleton; and the book-keeper, by direction of Buell, reported them as on hand in the store in his reports to the officers of the company at Florence. On being subsequently interrogated as to said machines by officers of the company, Buell made statements in regard to them which it is not necessary to detail *444 here; it is sufficient to say that they were false. It appears further in evidence, that under the arrangement made with S. L. Woodhouse, Buell stored the one hundred machines in the Trinity stores, with Warford & Yanderveer, the defendants in this action; that the warehouse receipt therefor was issued to S. L. Woodhouse; that Buell continued after that time to have transactions on his own account with S. L. Woodhouse, and that the machines remained in the hands of ,the latter as security for the performance by Buell of his personal obligations. In December, 1866, S. L. Woodhouse pledged the same machines to the New York Warehouse and Security Company for a loan of five thousand dollars to himself. To obtain this loan, Woodhouse delivered up his warehouse receipt, and procured another in the name of the company last mentioned. These are substantially the undisputed facts of the case, and upon them it is to be determined whether Buell obtained the machines in question by means which amount to a larceny.
As to the eighty-three machines first referred to, Buell did not even have the special custody of them for the purpose of exhibition and sale; he had no control whatever over them; he made an agreement with Woodhouse to furnish eight thousand dollars’ worth of machines as security for the performance of a personal obligation on his part, and then resorted to a trick to get hold of them from, the plaintiffs; he falsely pretended he had received orders, and on the faith of such representations the company forwarded the eighty-three machines. Mow, if they were thus sent to Buell individually, and, in doing so, the company intended to part, not only with the possession of the goods, but with their right of property in them also, to Buell, the offence is not larceny, but obtaining goods by false pretences; and in such case the action cannot be maintained against the defendants, even if Buell had felonious intent to absolutely deprive the company of their property in the machines at the time he sent the pretended orders. But if the company intended to part with only the possession of the goods to Buell, but still meant and intended to retain their right of property in the same as against Buell, the taking of the *445 goods by Buell, with a felonious intent at the time to deprive the company of their property therein, constituted larceny. If Buell, therefore, had been a perfect stranger to tire company, and as such had procured the machines, and the possession of the same, by means of the trick employed by him, and with the felonious intent referred to by me, ab initio, and then converted the goods, he* was guilty of larceny, if the company, in forwarding the goods, did not intend to part with their right of property in, and title to, the goods to him, as well as with the possession of the same.
Thus, where the prisoner bad induced the prosecutor to let him have fifteen dozen slippers, saying that Tie had an order for them, and both went with them to the place of sale, the prosecutor staying outside of the shop at the prisoner’s request, and the prisoner sold the slippers, but made some excuse for not handing the price over, and then ran away, there was a conviction of larceny (Lyon v. De Bass, 11 Adol. & Ellis, 326).
J., by falsely representing to S.that he had sold for S. a quantity of goods to B. H. & Co., induced S. to send the goods to the store of E. H. & Co. J. then went to the store of B: II. & Co., with whom he had, in fact, no dealings on account of S., and informed them that the goods were sent there by mistake, and induced them by such misrepresentation to deliver the goods to him, and took them away from the store of B. II. & Co., and converted them to his own use. It was held that this was larceny, and not simply obtaining goods by false pretences (People v. Jackson, 3 Bark. Cr. R., 590).
Brevailing on a tradesman to take goods to a place on pretence that he shall then be paid for them, and inducing him to leave them in the care of a third person, and then getting them from him without paying for them, is larceny, if the intent, ab initio, was to get the goods without paying for them (Rex v. Campbell, R. & M., C. C. R., 179; cited in Stephens v. Hart, 4 Bing., 476).
Where the prosecutors owned wheat, which they kept in a storehouse, under the charge of their servant, Eastwick, and Bobins, the prisoner, another of their servants, went to Eastwick, and represented that he had an order to take some of the wheat *446 and convey it to the Brighton railway, and thus obtained five quarters, which he disposed of, and did "not take to the railway, it was objected, on trial, that this merely amounted to obtaining the wheat by false pretences. The joint was reserved, the jury finding the prisoner guilty of larceny. Upon the hearing, the conviction was affirmed (Reg. v. Robins., 29 Eng. Law and Eq., 544).
In Reg. v. Morgan, it was proved at trial that Morgan represented himself to the prosecutrix to be a French sea-captain, and offered to sell her two dresses, one for twelve shillings and the other for twenty-five shillings. The prosecutrix chose the latter, and produced twenty-one shillings, when the prisoner took the money from her hand, she neither consenting nor resisting, and, laying down the cheaper dress, 'went away. Held, by a full bench, larceny (Reg. v. Morgan, 29 Eng. Law and Eq., 543).
The prosecutor, in Begina «. Brown, délivered money to the prisoner Brown to carry to a Mr. Haines, Brown saying that he lived near Haines’ place. Brown’s statement was false, and ne appropriated the money to his own use. He was convicted, the point whether the act done was, in law, larceny, being reserved. The conviction was affirmed. Pollock, C.B., said : “ This conviction must be affirmed. 'There was a case tried at the Old Bailey, in which a very ingenious fraud had been perpetrated on some bankers by their clerk, who induced a customer of the bank to allow him to place some money of his own to his account, and then appropriated the money of the bank to his own use; it was held that he was guilty of larceny ” (Rex v. Hammond, 2 Leach’s C. C., 1083; and see Rex v. Semple, 1 Leach’s C. C., 420). “ The machinery by which a person gets another man’s property out of his possession, with the view of stealing it, makes no difference in the offence” (Regina v. Brown, 36 Eng. Law and Eq., 610).
The cases cited in the books upon the same point are very numerous, and embrace a large variety of circumstances, and .firmly establish the doctrine that where the goods are delivered by the owner, or person having the legal custody or possession *447 of them, and he is induced to part with their possession through artifice or fraud, the right of property still remaining unchanged, the offence is larceny (Reg. v. Johnston, 2 Denison, Crown Cases, 310; State v. Lindenthal, 5 Richardson [S. Caro.], 237; Noah Pearce’s case, 2 East PI. of Crown, 603; Rex v. Davenport, Archb. Peel’s Acts, 4; Russel on Cr., ed. 1865, p. 201; State v. Watson, 41 New Hamp. [4 Chandler], 533; Starkie v. Com., 1 Leigh, 752; Rex v. Aickles, 1 Leach, C. C., 294; Rex v. Wilkins, 1 Leach, Crown Cases, 520 ; Reg. v. Webb, 5 Cox, C. C., 154; Reg. v. Simpson, 2 Cox, C. C., 235; Reg. v. Bromley, 1 Leigh & Cave’s R., 21; State v. Humphrey, 32 Verm. [3 Shaw], 569).
On the other hand, if the company forwarded the eighty-three machines to Buell as their clerk and employé (and the evidence shows that they were addressed to the company’s store in Broadway), Buell, upon receipt of them, either at the store or at the wharf, acquired, by virtue of his employment, the charge or custody of the goods for a special purpose only, namely, to reship them in pursuance of the orders received by him, if he had any, and if he did not have any such orders, then to exhibit and sell them in the name of the company as their manufacture, and for their account and benefit. In either ease there was neither a change of property, nor of possession, but the' legal possession still remained in the plaintiffs. I have already shown that Buell cannot be considered as factor or agent within the meaning of the factor’s act, but that he was in effect a mere'clerk; nor can he be looked upon as a bailee in this ease. Clerks, who have the charge or custody of the goods of their principal for a certain, special, and particular purpose, are not bailees within the rulés as to larceny by bailees, for the possession of the clerk is always deemed the possession of the principal, and if he dispose of the goods to his own use, with a felonious intent, it is larceny (2 Arch. Cr. Pr., 387). It therefore made no difference, in this aspect of the case, whether Buell took the eighty-three machines from the wharf, before they reached the company’s store, or from the store, after they reached there; in either case he took *448 them out of the legal possession of the company. The same remarks apply to the seventeen machines taken subsequently -from the.store. It consequently follows that, even if Buell had not procured the shipment of a part of the machines by trick or device, but honestly, and the eightyythree machines had been sent and received at the store, marked and addressed as they were, for the purpose of being shipped to the West Indies, and Buell had taken them, together with the other seventéen, from the company’s store, without the knowledge and consent of the plaintiffs, with an intent at that very time to convert them to his own use, and to deprive the company of their property in them, he committed larceny (People v. Wood, 2 Park Cr.R., 22 ; People v. Call, 1 Denio, 120; Walker v. Commonwealth, 8 Leigh [Va.], 743; cases in 2 East. P. C., 564 to 567 inclusive; State v. Self, 1 Bay. [S. Carol.], 242; 1 Hale, 506 ; 1 Hawk., ch. 33, sec. 6; P. v. Mane, 1 Mood. C. C., 368). The questions to be determined by the jury in this case, upon the point of larceny, therefore, were, in regard to the eighty-three machines, as well as the seventeen, whether Buell obtained the possession of them Avith a felonious intent at the time he took them, and whether at the same time the company intended to part, not only with the possession, but also with their right of property in the machines to Buell, for Avithout a concurrence of both, there was no larceny. These questions were fully discussed by the learned justice presiding at the trial, in his charge, and fairly submitted to the jury in accordance Avith the vieAvs herein expressed. The said justice expressly charged the jury that, if they should find either that there was no such felonious intent on the part of Buell, or, there being such a felonious intent, yet the plaintiffs intended to part with their property in the goods to Mr. Buell, the 'defendants were entitled to a verdict. I can discover no error in the charge upon the question of larceny, and as the determination of that question was left entirely to the jury, upon all the facts and circumstances in the case, no ground of complaint can exist upon this point (Wilson v. the People, 39 N. Y., 459).
The third point presented for determination is whether *449 the defendants’ title to the possession of the goods, so far as they represent the lien of Woodhouse and of the New York Warehouse and Security Co. upon the machines, shall be protected, notwithstanding the larceny committed by Buell.
The universal and fundamental principle of our law of personal property is, that no man can he divested of his property without his own consent, and, consequently, that even a T)ona fide purchaser from a person in the possession of property, who has no title to it, and no authority whatever from the owner to sell or dispose of it, cannot require any title against the true proprietor (Williams v. Merle, 11 Wend., 80; Ely v. Ehle, 3 Comst., 509 ; Everett v. Coffin, 6 Wend., 603 ; Everett v. Saltus, 15 Wend., 474,, and same case on error, 20 Wend., 69).
To whatever and however numerous exceptions this rule of our law may be subject, it is unquestionably, in the language of Senator Yerplanclc in the case last referred to, the general and regulating principle, modified only by the absolute necessity or the obvious policy of human affairs. Thus the law will in many cases imply an authority from the owner to sell, and where the owner has conferred an apparent right of property upon the vendor, or an apparent right of disposal, when he has furnished the vendor with the external indicia of such right, and the vendor has sold the goods and delivered the possession thereof, the law will protect a purchaser who has acquired the .property for a fair and valuable consideration, in the usual course of trade, and without any notice of any conflicting claim, or of suspicious circumstances calculated to awaken inquiry or to put him on his guard, although the goods were in fact obtained by the vendor from the true owner fraudulently; but this rule does not apply where the goods have been obtained feloniously by means of a larceny. Ho one can acquire title to goods through the commission of a larceny (Hoffman v. Carow, 20 Wend., 21; same case on error to Court of Errors, 22 Wend., 285; Conlan v. Batting, 3 E. D. Smith, 353; Brower v. Peabody, 13 N. Y., 121).
The cases relied upon by the defendants in this action do not form exceptions to the rule last referred to. In Malcolm v. *450 Loveridge (13 Barb., 372), Bassett v. Smith (23 N. Y., 252), and. Keyser v. Harbeek (3 Duer, 373), the goods were obtained by false pretences, and the owners had not only voluntarily parted with the possession of thé goods, but had intended also to part with the title to them; and for that reason it' was held that a person obtaining goods by false pretences, indictable under 2 R. S., p. 677, sec. 53, can vest a title valid as against his vendor in a bona fide purchaser, but that the title is defeasible and avoidable, at the election of the first vendor, while the goods remain in the possession of his fraudulent vendee, or in that of any person merely succeeding to the rights of the latter or standing upon his title. __
In- Caldwell v. Bartlett (3 Duer, 341) a new trial was -granted for the reason that it appeared from the evidence that the goods were taken by delivery from a foreman, whose business it was to make delivery, and who was assumed to have had authority to bind his principal by a delivery; but at the • same time the Court fully.recognized the "rule,that one who tortiously possesses himself of another’s goods without a delivery from, or the consent, express or implied, of the true owner, can vest no title in even a bona fide purchaser. It follows therefore that the question whether the defendants or those whom they represent were bona fide purchasers or pledgees has nothing to do with this case, and the learned judge was correct in withdrawing this question from the consideration of the jury. One who deals with or disposes of the personal property of another (the same-not being negotiable paper) must see to it that he acts by the authority of some one who has power sufficient to warrant such dealing or disposition (Anderson v. Nichols, 5 Bosw., 121).
Buell, having stolen the machines, could convey no title to or interest in them, nor could he create any lien upon them against the true owner, and the defendants, for that reason, were not entitled to payment or a tender of the amount of their charges for storage before suit brought, and the evidence proposed by the defendants of the previous storage by Buell of the company’s machines, and the payment of the storage thereon, was properly *451 excluded. For the same reason the evidence as to Buell’s acts and false statements to the company in regard to the machines subsequent to the pledge of the same to Woodhouse was competent evidence to be taken into consideration by the jury, together with all the other facts and circumstances of the case, for the purpose of the determination of the existence of the felonious intent on the part of Buell at the time of the taking of the goods by him.
The only remaining question raised by the defendants upon the appeal is,' that it was competent for the plaintiffs to waive the tort by which Buell had obtained the goods from them, and to look to him for the price, and so confirm his title to the machines, and that there was sufficient evidence to go to the jury of such waiver and settlement. Upon that point I also differ with the defendants after a careful examination of the evidence. Buell had committed other defalcations and abstractions of money, amounting to $5,653.98 ; he gave a note to the company for that amount, which was subsequently paid. The two items of $1,500 and $4,153.98 on the check-book constitute payments on account of this note.
In regard to the one hundred machines in suit no settlement was made with Buell, no charge made for them, no credit given, no receipt passed. They were demanded of Buell, and he said that he should return them very soon, and that he would do so. He was required by Hr. Wardell, the General Agent of the Company, to give something to show for them until he did return them, and he agreed to give, and finally did give, to Wardell a note as security for the machines until he should return them, which note was left with the attorney of the plaintiff, with instructions to hold the same as security for the return of the machines, but said note has never been paid. The evidence to this effect is not contradicted, and no fact or circumstances were proven in the case showing, or tending to show, that the plaintiffs charged the machines to Buell, or in any way gave him credit in respect to them. The memorandum from the letter-book of the plaintiffs containing the items of the defalcations and abstractions of *452 Buell, and, among other things, specifying the one hundred machines in question, and putting their value at $5,137.43, was shown to be simply a Memorandum, and not a charge. The evidence upon this point was, therefore, insufficient for the purpose for which the defendants desired to have it submitted to the jury. Again, as Buell never acquired a title of any kind, and could not even transfer a title which was voidable at the election of the plaintiffs, and, as in consequence thereof, the defendants never acquired any title, it is difficult to perceive what title could have been confirmed by the plaintiffs by a settlement with Buell, which the latter failed to carry out. ¡No error was, therefore, in my judgment, committed in excluding that question from the consideration of the jury.
The judgment appealed from, and the order denying the defendants’ motion upon the judge’s minutes for a new trial, should be affirmed, with costs.